## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MARK W. HARDY,                                    Case No. 23-cv-563 (JRT/JFD)

          Plaintiff,

v.                                                                    **ORDER**

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

          Defendant.

This matter is before the Court on Plaintiff Mark W. Hardy's Motion to Conduct Discovery and to Compel Defendant to Produce Privilege Log Documents. (Dkt. No. 10.) The Court held a hearing on the motion on July 14, 2023. Denise Yegge Tataryn appeared on behalf of Mr. Hardy. Terrence J. Wagener appeared on behalf of Unum Life Insurance Company of America ("Unum"). The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court denies Mr. Hardy's Motion to Conduct Additional Discovery because he has not demonstrated good cause for conducting additional discovery and expanding the administrative record for the Court. The Court grants Mr. Hardy's Motion to Compel Defendant to Produce Privilege Log Documents because the fiduciary exception to the attorney-client privilege applies.

I.   **Motion to Conduct Additional Discovery**

A.   **Background**

This motion arises from a dispute between Mr. Hardy and Unum Life Insurance regarding the processing of Mr. Hardy's long-term disability ("LTD") claim. (Compl. ¶ 32, Dkt. No. 1.) Mr. Hardy, an attorney specializing in the defense of medical malpractice claims, suffered a fractured pelvis in late October 2016, and it was discovered that Mr. Hardy also had a plasmacytoma. (*Id.* ¶¶ 20, 21.) As a result, Mr. Hardy had surgery to remove the tumor and repair his pelvic bone shortly before Thanksgiving in 2016. (*Id.* ¶ 21.) Mr. Hardy completed five weeks of radiation therapy, which did not succeed in treating the plasmacytoma. (*Id.* ¶ 23.) Mr. Hardy began chemotherapy which constricted him to a part-time work schedule. (*Id.* ¶¶ 25-26.)

In February 2019, Unum approved Mr. Hardy's LTD claim stating that Mr. Hardy was working at maximum capacity and required significant improvement before returning to work full-time. (*Id.* ¶ 35.) In June 2020, Unum requested updated information from Mr. Hardy regarding his work status and condition. (*Id.* ¶ 36.) Mr. Hardy's oncologist completed a physician statement on his behalf, stating that he was unable to return to work full time because of the side effects of chemotherapy. (*Id.*) Unum recertified Mr. Hardy's disability on July 13, 2020, and informed him by voice mail that his claim would not be reviewed for another year. (*Id.* ¶¶ 37–38.)[1] On August 28, 2020, Mr. Hardy's claim was

---

[1] Without objection from Unum, the Court received from Ms. Tataryn a recording of this voice mail which Mr. Hardy had retained. The recording is part of the record of the hearing on Mr. Hardy's motions. The Court has listened to the recording and finds that an Unum representative did state that Mr. Hardy's claim would not be reviewed for another year.

transferred to another Unum employee for additional review. (*Id.* ¶ 38.) Unum sent another form to Mr. Hardy's oncologist and began a background investigation without notifying Mr. Hardy. (*Id.* ¶ 39.)

On October 19, 2020, following additional inquiry by Unum into Mr. Hardy's condition and medical history, Mr. Hardy sent Unum a letter asking about what he saw as heightened scrutiny of his LTD claim. (Tataryn Decl. Ex. 3, Dkt. No. 13-3.) Unum responded by denying any such heightened scrutiny, and explaining they were simply collecting information related to eligibility for benefits. (Tataryn Decl. Ex. 4, Dkt. No. 13-4.) Unum continued to send letters to Mr. Hardy's treating physician, reviewed documents, and requested information about Mr. Hardy's occupation. (Compl. ¶¶ 39-49.) On December 10, 2020, Unum sent a letter to Mr. Hardy informing him that his claim was being terminated. (Compl. ¶ 50.) Mr. Hardy appealed this decision within Unum in February of 2022. (*Id.* ¶ 58.) Unum denied Mr. Hardy's appeal in May of 2022, and Mr. Hardy brought suit on March 9, 2023. (*Id.* ¶ 87.) Through this motion Mr. Hardy is seeking to conduct discovery about why Unum changed its position in a matter of weeks regarding Mr. Hardy's disability status.

**B.    Legal Standards**

**1.    Federal Rule of Civil Procedure 26(b)(1)**

Federal Rule of Civil Procedure 26(b)(1) establishes the scope and limitations of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking the discovery must meet a threshold burden to show

3

relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). "Once the party seeking the discovery has made a threshold showing of relevance, the court generally looks to the party resisting discovery to show specific facts demonstrating lack of relevancy or undue burden." *Baker v. Cenlar FSB*, No. 20-CV-0967 (JRT/HB), 2021 WL 2493767, at *3 (D. Minn. June 18, 2021).

Rule 26 also requires information sought in discovery to be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Factors important to the proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

## 2. De Novo Review for ERISA Benefits Decisions

The parties agree that the proper standard of review in this case is de novo. (Pl.'s Mem. Supp. Mot. Compel at 1, Dkt. No. 12; Def.'s Mem. Opp'n at 1, Dkt. No. 15.) Additional discovery concerning ERISA benefit decisions is generally discouraged in order to "ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." *Brown v. Seitz Foods, Inc. Disability Ben. Plan*, 140 F.3d 1198, 1200-01 (8th Cir. 1998) (citing *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-642 (8th Cir. 1997) (quoting *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993))). "When reviewing a decision to deny benefits, the Court is limited to a review of the evidence that was before the administrator when the claim was denied." *Larson v. Minn. Chamber Bus. Servs., Inc. Emp. Welfare Plan*, 114 F. Supp. 2d

867, 869 (D. Minn. 2000). As a result, courts do not allow the parties in ERISA cases to obtain additional discovery as a general rule. *Id.* If the Court finds good cause, it may allow the administrative record to be supplemented with additional material. *Brown*, 140 F.3d at 1200. Good cause hinges on whether the evidence is necessary for adequate de novo review of the fiduciary's decision. *Donatelli*, 992 F.2d at 765.

### C.   Discussion

Mr. Hardy suggests that the administrative record produced by Unum is not complete, suggests that a complete administrative record would show that Unum's decision to terminate benefits was tainted by bias or bad faith, and contends that he is entitled to additional discovery to show this in order that the Court, on de novo review, may properly assess this evidence. (Pl.'s Mem. Supp. Mot. Compel at 7.) Mr. Hardy claims there is no evidence that explains what he calls Unum's "about face"—the decision to terminate benefits—that followed the heightened scrutiny Mr. Hardy alleges was applied to his claim upon renewed review. (*Id.* at 8.) Mr. Hardy points to the apparent transfer of his claim from "CORE" to "Comp." within Unum's Special Benefits Unit in their Portland, Maine office, and the speed with which Unum reversed itself as indicators of heightened scrutiny of his claim.[2] Mr. Hardy asserts that he is entitled to discovery to determine Unum's intent

---

[2] At the hearing on his motion, Mr. Hardy's attorney introduced into the hearing record, without objection, Unum documents from the administrative record showing this apparent shift and an affidavit from Unum employee Michael Leding explaining the operations of Unum's Special Benefits Unit ("SBU"). According to Mr. Leding's affidavit, SBU has two sub-parts, "CORE," which handles claims "that are paid on an ongoing monthly basis and, once a year, a request is sent to the insured to update his or her condition." (Leding Aff. ¶ 3.) The other SBU sub-part, Comp., specializes in claims that "require a higher level of claims handling expertise and are assigned to [staff] experienced in active claims

regarding this transfer and review which culminated in the termination of his LTD without any change in condition. (*Id.*) Mr. Hardy also argued at the motion hearing that the requested information will show that Unum acted in bad faith while processing his disability benefits claim. Mr. Hardy argues this information is also necessary for his claim for attorney's fees. (*Id.*) Unum responds that Mr. Hardy lacks good cause to conduct discovery because of the de novo standard of review. (Def.'s Mem. Opp'n at 1.) Unum further argues that Mr. Hardy lacks good cause because no medical or occupational information is missing from the record that would prevent adequate de novo review. (*Id.* at 6.) Additionally, Unum argues that good cause cannot be shown where the claimant seeks evidence about the administrator's decision-making process. (*Id.* at 4.)

The Court denies Mr. Hardy's motion to conduct additional discovery because he has not demonstrated how the additional discovery is necessary for adequate de novo review of his disability benefit claims. Under de novo review, courts evaluate the evidence within the administrative record without giving any deference to the administrator's decision. *Davidson v. Prudential Ins. Co.*, 953 F.2d 1093, 1095 (8th Cir. 1992). The district court may allow the administrative record to be supplemented with additional evidence if good cause to do so is shown. *Avenoso v. Reliance Standard Life Ins. Co.,* 19 F.4th 1020, 1026 (8th Cir. 2021) (citing *King v. Hartford Life & Accident Ins.*, 414 F.3d 994, 998 (8th Cir. 2016)). Mr. Hardy is seeking to expand the administrative record with information regarding the administrator's mental processes and intent while processing Mr.

---

handling/investigation." (*Id.*) The quoted language does not, of course, necessarily mean that a claim's assignment to Comp. indicates it will be denied.

Hardy's claim. At oral argument on this motion, the Court and counsel discussed a hypothetical in which an employee with even a malign or corrupt attitude evaluated Mr. Hardy's file. Even if Mr. Hardy's file had been reviewed by someone with such motives, the Court will be reviewing the matter de novo, thereby removing from the analysis such an employee's subjective attitude. Accordingly, the information sought by Mr. Hardy is not relevant when the court is analyzing de novo the administrative record to determine whether Mr. Hardy is disabled under his LTD plan. Additionally, Mr. Hardy has failed to allege or show that any medical evidence or records are missing from the administrative record provided by Unum. Mr. Hardy has not demonstrated that the record is incomplete or otherwise shown good cause for conducting additional discovery. Therefore, Mr. Hardy's Motion to Conduct Discovery is denied.

## II.   Motion to Compel Defendant to Produce Privilege Log Documents

### A.   Background

On May 25, 2023, Unum produced a privilege log asserting attorney-client privilege and work product privilege (Tataryn Decl. Ex. 7, Dkt. No. 13-7.) The privilege log listed communications between Unum and its in-house attorney Dan Flynn. (*Id.*) The first communication withheld by Unum was between Jennifer Mullett and Dan Flynn on October 5, 2020. (*Id.*) The second withheld communication occurred on February 16, 2021, and was between Janet Fox and Dan Flynn. (*Id.*)

### B.   Legal Standards

The fiduciary exception to the attorney-client privilege was initially adopted in trust law when beneficiaries sought privileged information from trustees. *See United States v.*

7

*Jicarilla Apache Nation*, 564 U.S. 162, 167 (2011). In the ERISA context, the fiduciary exception eliminates attorney-client privilege when asserted by a beneficiary against a fiduciary. *See Carr v. Anheuser-Busch Cos.*, 791 F. Supp. 2d 672, 675 (E.D. Mo. 2011). The rationale behind this exception is that the fiduciary is obligated to provide full and accurate information about plan administration to the beneficiaries. *Id.* Additionally, the plan beneficiaries are the "real client" when a plan administrator consults an attorney about plan administration. *Id.* Since its inception, several circuit courts have applied the fiduciary exception in cases involving ERISA fiduciaries. *Krase v. Life Ins. Co. of N. Am.*, 962 F. Supp. 2d 1033 (N.D. Ill. 2013); *United States v. Mett*, 178 F.3d 1058 (9th Cir. 1999); *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45 (D. Mass. 2007).

The liability exception to the fiduciary exception provides that the attorney-client privilege is preserved on behalf of a fiduciary when an adversarial relationship develops between the administrator and the beneficiary. *Scalia v. Reliance Tr. Co.*, No. 17-CV-4540 (SRN/ECW), 2020 WL 2111368, at *7 (D. Minn. May 4, 2020). Communications between the fiduciary and counsel regarding the fiduciary's defense against plan beneficiaries are protected under the liability exception when the relationship between fiduciary and beneficiary is adversarial. *Id.* There must be a sufficient threat that litigation is imminent to invoke the liability exception. *Olsen v. Std. Ins. Co.*, No. 13-cv-576, Dkt. No. 33, slip op. at 6 (D. Minn. Oct. 17, 2013).

## C.   Discussion

Mr. Hardy argues that Unum must provide the privileged communications pursuant to the fiduciary exception because it has a duty of full disclosure under ERISA. (Pl.'s Mem.

Supp. Mot. Compel at 9.) Additionally, Mr. Hardy states that communications between a fiduciary and an attorney from the beginning of the claim through the final denial on appeal are subject to the fiduciary exception to the attorney-client privilege. (*Id.*)

Unum argues that the fiduciary exception does not apply in this case because of the liability "exception to the exception." Unum asserts that an adversarial relationship developed between it and Mr. Hardy on September 21, 2020, when Mr. Hardy sent a letter which "involved his entire firm in a manner that implicated future litigation." (Def.'s Mem. at 12; *see* Tataryn Decl. Ex. 1, Dkt. No. 13-1.) Mr. Hardy stated in the letter, "I and my firm have always been forthcoming and transparent with Unum. Accordingly, I ask that you and Unum extend the courtesy to me of explaining why my claim is now subject to heightened scrutiny by Unum." (Def.'s Mem. at 12.) The date on this letter is about two weeks before the October 5, 2020 Mullett-Flynn communication that Unum logged as attorney-client privileged. Unum also contends that Mr. Hardy's retention of counsel, his demanding letters requesting information, and the fact that the initial termination of benefits on December 10, 2020 occurred before the second privileged communication on February 16, 2021 indicated an adversarial relationship had developed. (*Id.* at 12-13.)

The fiduciary exception was addressed in depth by then-Magistrate Judge, now District Judge, Katherine M. Menendez in a similar case pertaining to disability benefits governed by ERISA: *Christoff v. Unum Life Ins. Co. of America*, No. 0:17-cv-03512, 2018 WL 1327112 (D. Minn. Mar. 15, 2018).

> [A] fiduciary exception to the attorney-client privilege is widely accepted in federal courts. The exception has also been fairly consistently applied in the ERISA context. Courts applying the exception in ERISA cases attempt to

differentiate between situations in which an ERISA fiduciary obtains legal advice about matters of plan administration, which must be disclosed, and those where the fiduciary seeks advice for non-fiduciary matters, which remain privileged. The focus in that inquiry is often the point at which an adversarial relationship between fiduciary and beneficiary materialized such that the fiduciary is justified in seeking legal advice for its own benefit. Finally, although the exception has not been expressly adopted by the Eighth Circuit generally or in ERISA cases, its application by a district court in the ERISA context has gone undisturbed.

*Christoff*, 2018 WL 1327112, at *3 (D. Minn. Mar. 15, 2018). The relevant inquiry is whether and when an adversarial relationship developed between the parties. In the District of Minnesota, five factors guide courts in their determination of whether legal advice is meant to avoid litigation or to fulfill fiduciary duties:

Factors for courts to consider include whether: (1) the communication in question occurred before or after the final benefits determination; (2) the threat of litigation was more than merely a possibility; (3) the interests of the beneficiary and the fiduciary had significantly diverged; (4) the documents or communications in question were necessary or relied upon in the administrative claim process; and (5) the documents relate to amending the plan and were not considered in evaluating the claim at issue.

*Olsen v. Standard Ins. Co.*, No. 13-cv-576 (SRN/TNL), slip op. at 6, Dkt. No. 33 (D. Minn. Oct. 17, 2013).

In this case, Unum fails to establish that an adversarial relationship developed with Mr. Hardy before the dates of the communications listed on the privilege log. The facts at hand are very similar to those confronted by Judge Menendez in *Christoff*. In that case, Unum relied on three facts to argue that their relationship with the beneficiary had become adversarial before privileged communications. "(1) the communications post-date Unum's initial termination of benefits; (2) the communications responded to Mr. Christoff's attorney, who had referenced that termination decision; and (3) 'each of these

10

communications memorializes some disagreement between Unum's claims analysts and Plaintiff's counsel as to Unum's production of information to Plaintiff.'" *Christoff*, 2018 WL 1327112, at *7. Unum relies on almost exactly the same facts in this case.

Applying the *Olsen* factors, first, the communications do not actually postdate Unum's termination of benefits. The communications preceded Unum's final denial of Mr. Hardy's appeal on May 4, 2022. That timing does not automatically preclude applying the liability exception, but Unum has not demonstrated that Mr. Hardy's only available recourse was litigation at the time of the communications between Dan Snyder and Unum.

Second, Mr. Hardy's conduct does not signal a threat of litigation that is more than a mere possibility, unlike the conduct described in *Olsen*. Plaintiff's counsel in *Olsen* sent a letter to the insurer which stated,

> There are 180 lawyers at this firm, and all 180 of them would be standing in line to do whatever they can to make sure [the decedent]'s family gets what they are entitled to. For myself, I have spent 35 years in the employee benefits practice, a good part of it litigating claims like this. I know how to read an insurance contract and I know how a judge would read this one. I do not see any way their reading of the contract can stand.

*Id.* at 8. In contrast to invoking 180 lawyers from a firm, Mr. Hardy inquired about the changes in the processing of his claim by Unum. This inquiry did not signal to Unum pending or imminent litigation, unlike the letter from *Olsen*. Nor does the Court accept that an adversarial relationship developed once Mr. Hardy retained counsel.

> ERISA beneficiaries frequently obtain counsel to communicate with plan administrators following an initial denial of benefits. The fact that a beneficiary does so is certainly relevant to the Court's analysis, but it does not answer the question on its own. Instead, the beneficiary's retention of counsel must be accompanied by some indication that an adversarial relationship has developed.

*Christoff*, 2018 WL 1327112, at *7. The Court does not agree that Mr. Hardy's letters requesting information about his plan administration or his retention of counsel demonstrates an adversarial relationship between Mr. Hardy and Unum. His letters do not clearly signal imminent litigation, and he acted reasonably as a beneficiary inquiring about his plan administration.

The Court is not convinced that the disagreements described by Unum evidence an adversarial relationship in this case. Mr. Hardy sent Unum several letters at different times requesting information regarding his claim and information within the administrative record. Several of these letters requested information from Unum following the initial termination of benefits in order to be adequately prepared for appeal. Before the initial termination, Mr. Hardy inquired about changes from his insurer in a reasonable manner after being falsely told that his claim would not be reviewed for another year. The record does not support a finding that Mr. Hardy's actions clearly implicated future litigation.

The third factor from *Olsen*—that the interests of the fiduciary and beneficiary had significantly diverged—favors Mr. Hardy as well. Although the parties' interests clearly diverged at some point, it is not clear that they diverged significantly before the denial of Mr. Hardy's final appeal.

The record in this case is not sufficiently developed to weigh factors four and five, and the Court therefore considers them neutral.

In conclusion, this Court determines that the fiduciary exception to the attorney-client privilege applies in this case and that the liability exception-to-the-exception does

not apply. The Court accordingly grants Mr. Hardy's motion to compel Unum to produce the communications listed on the privilege log.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Conduct Additional Discovery and to Compel Defendant to Produce Privilege Log (Dkt. No. 10) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Date:  July 28, 2023                              *s/ John F. Docherty*
                                                  JOHN F. DOCHERTY
                                                  United States Magistrate Judge